UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANICE CHILDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-03984-JPH-TAB |
| ) | |
| ST. VINCENT HEART CENTER OF ) | |
| INDIANA, LLC ) | |
|    d/b/a THE HEART CENTER OF ) | |
| INDIANA, LLC, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Janice Childers was fired from her job as a switchboard operator at St. Vincent Heart Center of Indiana. She alleges that, before being terminated, her supervisor disclosed her confidential health information in violation of the Americans with Disabilities Act and that her termination was in retaliation for having reported the violation to St. Vincent's corporate compliance office. Ms. Childers also brings related state law claims. St. Vincent moved for summary judgment. Dkt. [52]. For the reasons below, the Court **GRANTS** St. Vincent's motion as to the ADA claims and relinquishes jurisdiction over the state law claims.

**I.
Facts and Background**

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."

1

*Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Because Ms. Childers did not timely respond to St. Vincent's motion for summary judgment, the Court treats St. Vincent's supported factual assertions as uncontested. S.D. Ind. L.R. 56.1(b); *see, e.g., Smith v. Lamz,* 321 F.3d 680, 883 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission.").

### A. Ms. Childers' Employment with St. Vincent

St. Vincent is a hospital that treats patients with heart conditions; it has a Heart Emergency Unit and inpatient beds. Dkt. 54-4 at 2 (King Decl. ¶ 4). St. Vincent hired Ms. Childers in November 2002 as a switchboard operator in guest services. Dkt. 54-1 at 12, 14 (Childers Dep. 43:9–15, 45:9–11). Janice King became her supervisor in 2006. Dkt. 54-3 at 5 (King Dep. 4:18–20). Ms. Childers was responsible for answering calls, routing calls to the correct person, maintaining a call log, monitoring facility alarms, and activating appropriate code notification procedures for medical emergencies. Dkt. 54-4 at 2 (King Decl. ¶¶ 6–7). Switchboard operators are required to remain at the switchboard and answer the phone within three rings, except when on authorized breaks. *Id.*

Between 2012 and 2017, Ms. Childers received five Performance Improvement Plans ("PIPs"). Three were given between June 20, 2010 and May 7, 2012, for leaving the switchboard unattended without securing coverage and "fail[ing] to follow behavioral standards [and] core values." Dkt. 54-1 at 125–

131 (Ex. 22, 23, 25). *Id.* (Ex. 25). Ms. Childers received another PIP on June 20, 2015 for poor punctuality. *Id.* at 132 (Ex. 26).

On or about August 10, 2015, Ms. Childers received her annual performance review for the 2014–2015 fiscal year. *Id.* at 133–39 (Ex. 27). The review included several comments from Ms. Childers' peers about her bullying colleagues and her threatening nature. *Id.* at 62, 133–39 (146:7–147:10, Ex. 27).

On May 2, 2016, Ms. Childers received a PIP for failing to acknowledge an alarm and make an overhead call alerting staff to a critically ill patient's room number. *Id.* at 47, 123 (120:3–12, Ex. 6). According to Ms. King, Ms. Childers' delay could have caused a life-threatening situation. Dkt. 54-4 at 3 (King Decl. ¶ 14). In August 2016, Ms. Childers received an overall rating of "needs improvement" from Ms. King on her annual performance evaluation. Dkt. 54-1 at 140 (Ex. 28).

### B. Ms. Childers' Back Injury and Conversations with Ms. King

Ms. Childers had back surgery in February 2016, *id.* at 69 (161:3–5), and thereafter had to attend follow-up appointments, do physical therapy and stretching exercises, and use a lumbar pillow. *Id.* at 78, 80 (170:6–19, 172:11–19).

On August 9, 2017, Ms. Childers emailed Ms. King to let her know that she had a doctor's appointment the following week. *Id.* at 78 (170:3–7). Ms. King then dropped by the switchboard operator room and told Ms. Childers that she had received the email. *Id.* (170:17–18). During this interaction, they

3

discussed Ms. Childers' back surgery, physical therapy, and how Ms. Childers was doing in general. *Id.* at 78, 79 (170:17–22, 171:5–8). Two other St. Vincent employees were in the room at the time. *Id.* at 78 (170:1–4). Afterwards, Ms. Childers went to Ms. King's office and told her she did not want her discussing her medical issues in front of others. *Id.* at 79 (171:12–15). Ms. King did not respond. *Id.* (171:16–17).

On August 15, 2017, Ms. Childers was working in the switchboard operator room. *Id.* at 79–80 (171:18–19, 172:1–2). Sometime during Ms. Childers' shift, Ms. King picked up a folder from Ms. Childers' desk and began reviewing it. *Id.* at 80 (172:12–13). This folder contained papers that Ms. Childers had received after her doctor's appointment. *Id.* at 83–84 (175:23–25; 176:1–2). Ms. King then began demonstrating back stretches that Ms. Childers had been instructed to do and talking to Ms. Childers about physical therapy and other things relating to Ms. Childers' medical appointment. *Id.* at 80 (172:14–19). This conversation occurred in the switchboard area in front of another St. Vincent employee. *Id.* at 79–80 (171:18–22, 172:1–5).

**C. 2017 Performance Improvement Plan & Annual Evaluation**

On August 13, 2017, Ms. Childers failed to timely call a physician to treat a patient being transferred to St. Vincent. *Id.* at 93–94 (185:23–186:19). According to Ms. King, this error could have caused a serious adverse incident for the patient. Dkt. 54-4 at 3 (King Decl. ¶ 15). On August 16, 2017, Ms. Childers received a PIP after this "Near Miss (Delay)," advising her that her

4

performance and progress would be reviewed again on September 18, 2017. Dkt. 54-1 at 147 (Ex. 31).

During that meeting, after receiving the PIP and her annual evaluation, Ms. Childers told Ms. King she should not discuss her medical information in front of others. *Id.* at 84–85 (176:21–25, 177:4–18). Ms. King initially denied discussing Ms. Childers' medical records, but then stated that she did it only because she cared. *Id.* (177:16–18).

On September 11, 2017, Ms. Childers reported to St. Vincent's compliance line that Ms. King had inappropriately disclosed her medical information in front of co-workers on August 9 and August 15, 2017. *Id.* at 104–05 (202:24–203:15).

### D. Ms. Childers' Termination

After Ms. Childers' August 16, 2017 PIP, Ms. King met with Lauri Yancey, Human Resources Advisor, and Becky Jacobson, Vice President of Finance, to discuss Ms. Childers' performance history and most recent PIPs. Dkt. 54-2 at 2–3 (Jacobson Decl. ¶¶ 2, 6); dkt. 54-3 at 35 (King Dep. 60:6–9); dkt. 54-4 at 3 (King Decl. ¶ 16); dkt. 54-5 at 2 (Yancey Decl. ¶¶ 2, 4). Ms. Jacobson and Ms. Yancey were aware of Ms. Childers' long history of performance issues and co-worker conflict, dkt. 54-2 at 3 (Jacobson Dec. ¶ 5); dkt. 54-5 at 3 (Yancey Decl. ¶ 4), but they did not know about the complaint that she had filed with the compliance department. Dkt. 54-1 at 112 (Childers Dep. 210:8–16); dkt. 54-2 at 3 (Jacobson Dec. ¶ 9); dkt. 54-5 at 3 (Yancey Dec. ¶ 7). Ms. Jacobson, Ms. Yancey, and St. Vincent's executive team decided to terminate Ms. Childers'

5

employment, citing her two most recent incidents implicating patient care and her history of performance issues. Dkt. 54-2 at 3 (¶ 7); dkt. 54-4 at 3 (¶ 5).

On September 18, 2017, Ms. Jacobson and Ms. Yancey met with Ms. Childers and terminated her employment. Dkt. 54-2 at 3 (¶ 8). At the end of the meeting, after Ms. Childers had been told that she was terminated, Ms. Childers told Ms. Jacobson and Ms. Yancey that she had filed a complaint against Ms. King with the compliance department. Dkt. 54-1 at 111-12 (Childers Dep. 209:7–210:16). This was Ms. Jacobson's and Ms. Yancey's first notice that Ms. Childers had filed a complaint. Dkt. 54-1 at 112 (Childers Dep. 210:8–16); dkt. 54-2 at 3 (Jacobson Dec. ¶ 9); dkt. 54-5 at 3 (Yancey Dec. ¶ 7).

### E.  Procedural History

On November 18, 2019, St. Vincent moved for summary judgment on all claims. Dkt. 52. The Magistrate Judge granted Ms. Childers two extensions of time to file her response. Dkt. 56, dkt. 58. After the second extension, her deadline was February 15, 2020, dkt. 58, but Ms. Childers did not file a response by then. After that deadline had passed, on February 17, 2020, Ms. Childers filed a third motion for an extension of time, dkt. 59, which the Magistrate Judge denied as untimely and not supported by good cause, dkt. 66. Nearly three weeks later, on March 5, 2020, she simultaneously filed a fourth motion for extension of time, dkt. 67, and response brief. Dkt. 69. Finding that the delay was "based on a lack of diligence and inattentiveness to this litigation," the Magistrate Judge denied the motion and struck the response brief as untimely. Dkt. 75.

6

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

When a party offers no response to a motion for summary judgment, the Court treats the moving party's supported factual assertions as uncontested. *See Smith*, 321 F.3d at 683 ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). This does not alter the standard for assessing a Rule 56(a) motion but does "reduc[e] the pool" from which facts and inferences may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

# III.
# Analysis

The complaint brings two federal claims under the ADA—disclosure of confidential medical information and retaliatory discharge—and four state-law claims. Dkt. 25.

## A. ADA Claims

### 1. Disclosure of Confidential Medical Information

Under the ADA, an employer may gather information about an employee's medical condition or history by (1) "conducting voluntary medical examinations . . . which are part of an employee health program" or (2) "mak[ing] inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). The ADA requires that information obtained either way be "treated as a confidential medical record." 42 U.S.C. §§ 12112(d)(3)(B), (d)(4)(C).

To prevail on an ADA claim alleging disclosure of confidential information, Ms. Childers must establish that: (1) St. Vincent obtained her medical information through employment-related medical examinations and inquiries, (2) that information was disclosed by the employer rather than treated as confidential,[1] and (3) she suffered a tangible injury from the disclosure. *Foos v. Taghleef Industries, Inc.,* 132 F.Supp.3d 1034, 1050 (S.D. Ind. 2015); *E.E.O.C. v. Thrivent Fin. for Lutherans*, 700 F.3d 1044, 1048 (7th Cir. 2012). St. Vincent argues that Ms. King did not obtain or disclose

---

[1] The exceptions in 42 U.S.C. § 12112(d)(3)(B)(i), (ii), (iii) are not at issue here.

confidential information as an employer and, regardless, Ms. Childers did not suffer any tangible injury as a result of the alleged disclosure. Dkt. 53 at 10.

The ADA does not require confidentiality of information received outside of medical examinations or inquiries. *See Thrivent Fin.*, 700 F.3d at 1050. Here, the incidents identified by Ms. Childers—Ms. King discussing Ms. Childers' back condition in front of fellow St. Vincent employees—are outside the scope of what's protected by the ADA. *Id.*; 42 U.S.C. §§ 12112(d)(3)(B), (d)(4)(C). The confidentiality provisions of the ADA do not apply because the information was not obtained through a medical exam or an inquiry about Ms. Childers' ability to perform job-related functions. *Id.*

The designated evidence shows that the August 9 conversation stemmed from an email that Ms. Childers sent to Ms. King informing her that Ms. Childers had a doctor's appointment. Dkt. 54-1 at 78. Ms. Childers reached out to Ms. King unprompted and voluntarily disclosed the fact that she had an upcoming doctor's appointment, excluding it from coverage under 42 U.S.C. § 12112(d). *Sheets v. Interra Credit Union*, No. 1:14-CV-265, 2016 WL 362366, at *7 (N.D. Ind. Jan. 29, 2016) (noting that "information that is voluntarily disclosed by an employee is not protected"), *aff'd* 671 Fed. Appx. 393 (7th Cir. 2016). This is not a "medical inquiry."

Furthermore, this conversation was limited in scope to "things in general about [Mr. Childers'] back surgery." Dkt. 54-1 at 78 (Childers Dep. 170:17–22). Ms. King informed Ms. Childers that she had received her email, asked Ms. Childers what time her appointment was and whether she was feeling okay,

9

and the two discussed a lumbar pillow that Ms. Childers was using. *Id.* (170:17–22). Ms. King also stated that if physical therapy was necessary, Ms. Childers should try to go somewhere near the hospital. *Id.* at 79 (Childers Dep. 171:6–8).

The designated evidence shows that the August 15 discussion relating to Ms. Childers' back condition originated when Ms. King picked up a folder from Ms. Childers' desk and read paperwork inside of it. Dkt. 54-1 at 80. Ms. King then demonstrated stretching exercises prescribed to Ms. Childers and "went on into some more detail again about [Ms. Childers'] physical therapy and other things that related to [her] doctor's visit." Dkt. 54-1 at 80 (Childers Dep. 172:13–19). This also is not an "inquir[y] into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B).

Because the designated evidence does not show that Ms. King obtained Ms. Childers' medical information through employment-related medical inquiries, it is not protected under the ADA's confidentiality provision. *See* 42 U.S.C. § 12112(d)(3)(B); 42 U.S.C. § 12112(d)(4)(C); *see also Thrivent Fin.*, 700 F.3d at 1050. Thus, St. Vincent is entitled to summary judgment on this claim.[2]

### 2. Retaliation

"Employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims [ ] are meritless." *Koty v.*

---

[2] Because Ms. Childers' claim fails under the medical inquiry prong, the Court does not address St. Vincent's argument regarding whether Ms. Childers has shown that she suffered a tangible injury.

*DuPage Cty., Illinois,* 900 F.3d 515, 519 (7th Cir. 2018). To prove a retaliation claim, Ms. Childers must present evidence of "(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Id.* St. Vincent argues that Ms. Childers cannot establish her *prima facie* case of retaliation and, even if she could, St. Vincent has proffered a legitimate, non-discriminatory reason for her termination. Dkt. 53 at 11.

An employer "must have had actual knowledge of the protected activity in order for [its] decisions to be retaliatory." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) ('[I]t is not sufficient that an employer could or even should have known about an employee's complaint.").

Here, two individuals were involved in the decision to terminate Ms. Childers' employment—Ms. Jacobson and Ms. Yancey. Dkt. 54-2 at 3 (Jacobson Dec. ¶ 7); dkt. 54-5 at 3 (Yancey Dec. ¶ 5); dkt. 54-1 at 109 (Childers Dep. 207:13–17). Neither knew of Ms. Childers' complaint to the corporate office at the time that they terminated her employment. Dkt. 54-2 at 3 (Jacobson Dec. ¶ 9); dkt. 54-5 at 3 (Yancey Dec. ¶ 7); dkt. 54-1 at 112 (Childers Dep. 210:8–20).

Without evidence that either Ms. Jacobson or Ms. Yancey knew about Ms. Childers's complaint to the corporate compliance office, no reasonable jury could find that St. Vincent retaliated against Ms. Childers for this statutorily

11

protected activity by terminating her. Therefore, St. Vincent is entitled to summary judgment on this claim.[3]

## B. State Law Claims

Because the Court has granted summary judgment to St. Vincent on the ADA claims, only Ms. Childers' state law claims remain.

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 478, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)); 28 U.S.C. § 1367(c). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id.* at 479 (internal quotation marks omitted). The Seventh Circuit has identified three exceptions "that may displace the presumption":

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480 (internal citations omitted).

None of the three exceptions apply here. First, remanding the case to Marion Superior Court will avoid any statute of limitations problems. *See*

---

[3] Because Ms. Childers' retaliation claim fails on other grounds, the Court declines to address pretext despite Ms. Childers's history of performance issues.

12

*Plaats v. City of Lafayette*, 2015 WL 5773724, at *4 (N.D. Ind. Sept. 30, 2015) (noting that any statute of limitations concerns "are less relevant when the court remands a case"), *aff'd sub nom. Plaats v. Barthelemy*, 641 F. App'x 624 (7th Cir. 2016).  Second, substantial judicial resources have not been expended on the merits of the state law claims.  *See RWJ*, 672 F.3d at 481.  While the case is over two years old, this motion for summary judgment has been the only contested motion that the Court has ruled on and the Court has expended relatively minimal resources supervising the development of these claims.  Third, it does not appear to the Court that the proper resolution of the state law claims is so obvious as to overcome the presumption that remand is appropriate. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("If the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction.").

Because none of the three exceptions apply in this case, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  *RWJ*, 672 F.3d at 479.  Ms. Childers' state law claims are **remanded** to Marion Superior Court.

## IV.
## Conclusion

St. Vincent's motion for summary judgment, dkt. [52], is **GRANTED** as to the Plaintiff's ADA claims.  St. Vincent's motion to strike witness list and exclude testimony, dkt. [74], is **DENIED as moot**.  Plaintiff's renewed motion to decline supplemental jurisdiction, dkt. [26], is **DENIED as moot**.  In the

13

absence of any remaining federal claims, the Court declines to continue to exercise supplemental jurisdiction over the state law claims set forth in Plaintiff's complaint; accordingly, those claims are **REMANDED** to the Marion Superior Court.

**SO ORDERED.**

Date: 1/14/2021

                                                   *James Patrick Hanlon*
                                                   James Patrick Hanlon
                                                   United States District Judge
                                                   Southern District of Indiana

Distribution:

James E. Ayers
WERNLE RISTINE & AYERS
ayersj@wralaw.com

Emily L. Connor
LITTLER MENDELSON, P.C. (Indianapolis)
econnor@littler.com

Alan L. McLaughlin
LITTLER MENDELSON, P.C. (Indianapolis)
amclaughlin@littler.com

Peter T. Tschanz
LITTLER MENDELSON, P.C. (Indianapolis)
ptschanz@littler.com